UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| KIM WILLIAMS BAYER | CIVIL ACTION |
| VERSUS | NO. 18-9702 |
| UNUM LIFE INSURANCE COMPANY OF AMERICA, ET AL. | SECTION "L" (4) |

## ORDER & REASONS

This matter came before the Court for final judgment based on the administrative record. After considering the parties' submissions, the administrative record, and the relevant law, the Court now rules as follows.

## I.    BACKGROUND

This case arises out of a dispute over the denial of short-term and long-term disability benefits to Plaintiff Kim Bayer, a senior property manager for Defendant Sealy Operating III, Inc. ("Sealy"). Defendant Unum Life Insurance Company of America ("Unum") provided insurance coverage to Sealy under Group Short-term Disability Policy No. 6468999 001 for the short-term disability plan ("Short-term Policy") and Group Long-term Disability Policy No. 468999 002 for the long-term disability plan ("Long-term Policy"). Sealy is named as the Plan Administrator for the Short-term Policy and Long-term Policy, which falls within the definition of an Employee Welfare Benefit Plan governed by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, *et seq*. Under ERISA, "a person denied benefits under an employee benefit plan [may] challenge that denial in federal court." *Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105, 108 (2008) (citing 29 U.S.C. § 1001, *et seq.*, 29 U.S.C. § 1132(a)(1)(B)). On October 18,

2018, Plaintiff filed suit against Sealy and Unum under ERISA seeking recovery of short-term and long-term disability insurance benefits and civil penalties.

The Fifth Circuit has held that "if an entity or person other than the named plan administrator takes on the responsibilities of the administrator, that entity would also be liable for benefits." *LifeCare Mgmt. Servs. LLC v. Ins. Mgmt. Adm'rs Inc.*, 703 F.3d 835, 845 (5th Cir. 2013) (quoting *Gomez–Gonzalez v. Rural Opportunities, Inc.*, 626 F.3d 654, 665 (1st Cir. 2010)). If a third-party administrator "exercises control over a plan's benefits claims process, and exerts that control to deny a claim by incorrectly interpreting a plan," then liability may attach to that third party-administrator. In this case, Unum was the third-party administrator who exercised control over the processing of Plaintiff's benefits claims and therefore is liable if Plaintiff's claims were wrongfully denied. The facts of Plaintiff's challenge to Unum's denial of her claims for benefits are as follows.

Plaintiff began working as a senior property manager for Sealy in September 2014. UA-CL-STD-000042, UA-CL-STD-000218. According to Sealy's written job description, Plaintiff's job duties included maintaining properties in good order and condition by contracting and scheduling necessary repairs and maintenance, conducting walk-throughs of buildings to ensure strict standards for maintenance and cleanliness, and researching vendors and collect bids from contractors. UA-CL-STD-000222–26. Plaintiff was also responsible for compiling budgets and other financial reports. UA-CL-STD-000223. After developing neurological symptoms of right hand and right body numbness and dragging of her right foot, Plaintiff underwent an MRI in January 2015. UA-CL-STD-000100. The January 2015 MRI showed "a few nonspecific white matter changes." UA-CL-STD-000100. Due to her new neurological symptoms and the white matter lesion in the January 2015, Plaintiff was referred to Bridget Bagert, M.D., M.P.H., the Program Director of the Ochsner Multiple Sclerosis Center. UA-CL-STD-000101.

### A. Short-Term Disability Benefits Claim

On April 15, 2015, Plaintiff saw Dr. Bagert for complaints of gait disturbance and right-sided numbness. UA-CL-STD-000099. Dr. Bagert noted that Plaintiff's neurologic examination was "largely unremarkable," but she recognized that Plaintiff's MRI was abnormal. UA-CL-STD-000099. During this initial visit, Dr. Bagert noted that Plaintiff had normal verbal comprehension, her short-term and remote memory were intact, and her attention, motor exam and gait were normal. UA-CL-STD-000101–02. On April 21, 2015, Dr. Bagert performed a lumbar puncture on Plaintiff. UA-STD-000103. During a follow-up visit on April 28, 2015, Dr. Bagert noted that Plaintiff reported her balance was slowly getting worse and she was experiencing right-sided weakness. UA-CL-STD-000113. Dr. Bagert then referred Plaintiff to Dr. William Davis, a rheumatologist, to rule out any rheumatic disease. UA-CL-STD-000118. Dr. Davis evaluated Plaintiff on May 8, 2015 and concluded that Plaintiff did not have a rheumatic disease. UA-CL-STD-000115–20.

Plaintiff next saw Dr. Bagert on May 13, 2015. UA-CL-STD-000123. During this visit, Dr. Bagert determined that Plaintiff met the criteria for clinically definite multiple sclerosis ("MS"), and recommended disease modifying therapies. UA-CL-STD-000123. Dr. Bagert also recommended Bayer undergo a repeat MRI in six months to establish a new baseline. UA-CL-STD-000123.

After a visit to Dr. Bagert's Physician Assistant on August 21, 2015, Plaintiff determined that she would apply for Short-Term Disability ("STD") benefits. UA-CL-STD-000125–30. On August 24, 2015, Bayer filed a claim for STD benefits, claiming that she was no longer able to work due to her disability from MS. UA-CL-STD-000039–000041. Specifically, she asserted that issues with balance and gait, an inability to stand for extended periods of time, fatigue, and memory changes prevented her from being able to perform her job as a property manager. *See* UA-CL-

STD-000329. She advised Unum that that her last day of work would be September 25, 2015. UA-CL-STD-000042, UA-CL-STD-000048. Dr. Bagert submitted an Attending Physician's Statement ("APS") dated August 28, 2015, in support of Plaintiff's STD claim. UA-CL-STD-000023. During a September 15, 2015 doctor's appointment, Dr. Bagert concluded that Plaintiff's job was a hindrance to her well-being. UA-CL-STD-000135. Dr. Bagert also recommended that Plaintiff cease working by September 25, 2015. *See* UA-CL-STD-000186. Dr. Davis also provided Unum with an APS dated August 28, 2015. UA-CL-STD-000022. In his APS, Dr. Davis noted that Plaintiff had reported problems with her balance, standing for extended periods of time, and fatigue, as well as some memory changes. UA-CL-STD-000022.

After a review by Unum's clinical consultant, on October 21, 2015, Unum sent a letter to Plaintiff denying her STD claim. UA-CL-STD-000186–89. Unum determined that Plaintiff did not meet the definition of "disabled" under its Short-term Policy based on a review of Plaintiff's records.[1] *See* UA-CL-STD-000186–89. Specifically, Unum decided that Plaintiff's physical exam, which had been conducted two weeks before her last day of work, "did not confirm [she] had any difficulty with balance or standing," Plaintiff's doctor "indicated [her] symptoms were improved since April 2015," and Plaintiff's MS "was noted to be clinically stable." UA-CL-STD-000186. Unum concluded that the MS symptoms that Plaintiff was experiencing "did not indicate [she]

---

[1] Unum's STD plan for Sealy as the policyholder states, in relevant, part:

> **HOW DOES UNUM DEFINE DISABILITY?**
> You are disabled when Unum determines that:
> -    you are **limited** from performing the **material and substantial duties** of your **regular occupation** due to your **sickness** or **injury**; . . .
> **MATERIAL AND SUBSTANTIAL DUTIES** means duties that:
> -    are normally required for the performance of your regular occupation and
> -    cannot be reasonably omitted or modified. . . .
> **REGULAR OCCUPATION** means the occupation you are routinely performing when your disability begins. Unum will look at your occupation as it is normally performed in the national economy,     instead of how the work tasks are performed for a specific employer or at a specific location.

UA-CL-STD-000159, UA-CL-STD-000169–70 (emphasis in original).

ha[d] a functional loss that would prevent [her] from performing the material and substantial duties of [her] occupation," and Unum therefore denied Plaintiff's claim for STD benefits. UA-CL-STD-000186. Notably, Unum did not have any medical personnel personally examine Plaintiff before coming to this conclusion.

On October 28, 2015, Plaintiff sent a letter to Unum requesting an appeal of its decision denying her claim for STD benefits. UA-CL-STD-000202. In support of her appeal, Plaintiff submitted additional documentation, which included a letter from Dr. Bagert dated October 27, 2015. UA-CL-STD-000203. In this letter, Dr. Bagert explained that Plaintiff began experiencing right-sided weakness with gait disturbance in April 2015. UA-CL-STD-000203. Dr. Bagert reiterated her opinion that Plaintiff should not return to work based upon her symptoms related to MS. UA-CL-STD-000203. As part of the appeals process, Jacqueline Ballback, MSN, RN, CNE conducted a clinical peer review of Plaintiff's complete file, which included data from Dr. Bagert, Dr. Davis, employment records, and the labs/diagnostic imaging. UA-CL-STD-000322–25. Unum again concluded that the records did not support a loss of functional capacity that would result in Plaintiff's inability to perform the duties of her occupation. UA-CL-STD-000328. In its letter dated November 13, 2015, Unum advised Plaintiff that it was upholding its denial of her STD benefits claim. UA-CL-STD-000327–32.

On November 16, 2015, Plaintiff provided Unum with an updated MRI report. UA-CL-STD-000343. Unum submitted the MRI report for evaluation to the medical department. UA-CL-STD-000347. Although the MRI showed a new lesion, Ms. Ballback's second review determined that the MRI provided no new data bearing on Plaintiff's functional capacity, and accordingly, she did not alter her prior determination. UA-CL-STD-000352–53. On November 20, 2015, Unum sent Plaintiff a letter advising that the new information did not change its position and again upheld its denial of Plaintiff's claim for STD benefits. UA-CL-STD-000355–57.

### B. Long-Term Disability Benefits Claim

Subsequently, on January 28, 2016, Plaintiff submitted her claim for LTD benefits. UA-CL-LTD-000041–46. On June 9, 2016, Unum denied Plaintiff's claim for LTD benefits because Unum concluded that Plaintiff's MS was an excluded "pre-existing condition" under the terms of both Unum's Long-term Policy and Sealy's prior insurance carrier's plan ("the Prudential Plan").[2] UA-CL-LTD-000862–68. Pursuant to the Long-term Policy, disabilities due to "pre-existing conditions" are not covered. UA-CL-LTD-000137. The Long-term Policy defines a "pre-existing condition" as existing if a person: (1) "received medical treatment, consultation, care or services including diagnostic measures, or took prescribed drugs or medicines in the 3 months just prior to [his/her] effective date of coverage" and (2) "[t]he disability begins in the first 12 months after [his/her] effective date of coverage." UA-CL-LTD-000137. The Long-term Policy took effect on April 1, 2015 and as discussed above, Plaintiff's date of disability was September 25, 2015, which is within the first 12 months of the effective date of the Long-term Policy. UA-CL-LTD-000863. Therefore, if Plaintiff received medical treatment, consultation, care or services, including diagnostic measures, or took prescribed drugs or medications between January 1, 2015 and March 31, 2015, then the pre-existing condition exclusion would apply, and Plaintiff would not be entitled to LTD benefits under the Long-term Policy.

Unum's Long-term Policy also contains a "continuing coverage" clause, which states that Unum will pay long-term disability benefits for what would be considered a pre-existing condition under the Long-term Policy if it would not be considered a pre-existing condition under the employer's prior insurance carrier's definition (here, the Prudential Plan). UA-CL-LTD-000139–

---

[2] Plaintiff participated in Sealy's short-term and long-term disability insurance coverage plan, which was initially provided through Prudential Insurance Company of America. R. Doc. 1 at 3. On or about April 1, 2015, Sealy changed its short-term and long-term disability insurance provider to Unum. R. Doc. 1 at 4.

40. Under the Prudential Plan, a claimant has a pre-existing condition if the circumstances listed in numbers 1 and 2 below are both met:

1. (a) [The person] received medical treatment, consultation, care or services, including diagnostic measures, or took prescribed drugs or medicines, or followed treatment recommendation in the 3 months just prior to [his/her] effective date of coverage; or (b) [The person] had symptoms for which an ordinarily prudent person would have consulted a health care provider in the 3 months just prior to [his/her] effective date of coverage.
2. [The person's] disability begins within 12 months of the date [his/her] coverage under the plan becomes effective.

UA-CL-LTD-000187.

The effective date of coverage of the Prudential Plan was December 1, 2014. UA-CL-LTD-000863. Because Plaintiff's date of disability of September 25, 2015 is within 12 months of the date that her coverage became effective under the Prudential Plan, if Plaintiff received medical treatment, consultation, care or services, or took prescribed drugs or medicines, or followed treatment recommendation between September 1, 2014 and November 30, 2014, or if she had symptoms for which "an ordinarily prudent person" would have consulted a health care provider in this time frame, then she would be excluded from receiving LTD benefits under the Prudential Plan due to the pre-existing condition exclusion.

In its June 9, 2016 denial of Plaintiff's LTD benefits claim, Unum determined that Plaintiff's MS was a "pre-existing condition" under both the Long-term Policy and the Prudential Plan. UA-CL-LTD-000862–64. Unum concluded that because Plaintiff had been treated for "neurological symptoms including unsteady gait and numbness on the right side" on January 21, 2015 and January 26, 2015, and she had been "referred to Dr. Bagert for 'possible MS'" on February 20, 2015, she had a pre-existing condition that precluded her from coverage under the Long-term Policy. UA-CL-LTD-000863. Moreover, Unum determined that because Plaintiff had been treated for an eye condition called Pars Planitis on November 20, 2014—which Unum

contends was "directly related" to Plaintiff's MS—Plaintiff's condition of MS was pre-existing and therefore excluded from coverage. UA-CL-LTD-000864. Unum asserts that it reached this conclusion based on a May 20, 2016 review of the medical records obtained to date, which was performed by Unum's clinical consultant, Shannon Pitula, RN, BSN. UA-CL-LTD-000831–35. Notably, this review was not conducted by a medical doctor—let alone an MS specialist—and Unum does not explain how Ms. Pitula has the appropriate training and experience in MS to render this opinion. 9 C.F.R. § 2560.503-1(h)(3); *see also Davis v. Aetna Life Ins. Co.*, 699 Fed. Appx. 287, 295 (5th Cir. 2017) ("As the district court noted, Aetna did not request review by a specialist from a completely unrelated field of medicine; both Drs. Braun and Ayyar, occupational medicine specialists, had the 'appropriate training and experience in the field of medicine involved in the medical judgment.'").

Unum also contends that its conclusion regarding the connection between Plaintiff's Pars Planitis treatment and her subsequent MS diagnosis was supported by Dr. Bagert herself. R. Doc. 47-1 at 11–12. Unum bases this argument on a letter it sent to Dr. Bagert, dated May 25, 2016, with the following question: "Do you think the identified condition of Pars Planitis OU on the 11/12/2014 ophthalmology note was indicative clinical finding of early MS?" UA-CL-LTD-000850. In response, Dr. Bagert checked "yes". UA-CL-LTD-000851. However, Dr. Bagert later clarified her response in an Affidavit, dated November 15, 2016:

> 4. That Pars Planitis is one symptom of possible MS;
> 5. That not all patients who have Pars Planitis have MS;
> 6. That not all MS patients have Pars Planitis;
> 7. After reviewing the MRI of October 5, 2012, after the time Kim Bayer was diagnosed with Pars Planitis, it is my opinion she did not have MS at that time; . . .
> 10. That Kim Bayer's onset date for MS is January 26, 2015 and her treatment for MS began after January 26, 2015.

UA-CL-LTD-001106.

Plaintiff appealed Unum's denial of her LTD benefits claim on November 17, 2016, and submitted Dr. Bagert's Affidavit described above in support of her appeal. UA-CL-LTD-001092–94. Nevertheless, on January 6, 2017, Unum denied Plaintiff's appeal. UA-CL-001122–29. In denying Plaintiff's appeal, Unum again relied on Plaintiff's treatment for Pars Planitis, but Unum also claimed—for the first time—that Plaintiff's October 24, 2014 visit to a doctor's office for "peripheral neuropathy" also supported a denial of Plaintiff's claim. UA-CL-001122–29. In its letter, Unum claimed that its "medical staff confirmed peripheral neuropathy is a symptom associated with Ms. Bayer's ultimate diagnosis of multiple sclerosis." UA-CL-LTD-001124. The medical staff to whom Unum refers is another clinical consultant, Margaret Maxwell, RN, BSN, MS, who reviewed Plaintiff's medical records but also did not conduct an examination of Plaintiff herself. UA-CL-001109–17; *see also* R. Doc. 47-1 at 13. Plaintiff notes that her visit to Dr. Le was due to tingling and numbness associated with a foot rash she had, and that she had this rash since at least 2005, UA-CL-LTD-000013, long before her MS diagnosis. R. Doc. 43-2 at 21.

## II.   PRESENT MOTIONS

Following Unum's denial of Plaintiff's STD and LTD benefit claims, as well as her appeals of these claim denials, Plaintiff filed suit in this Court pursuant to ERISA, 29 U.S.C. § 1132(e)(1) and § 1132(f). R. Doc. 1 at 2. On April 17, 2019, the parties moved for this Court to allow them to submit the case on Motions for Final Judgment Based on the Administrative Record. R. Doc. 21. On April 22, the Court granted the Motion. R. Doc. 24. The parties subsequently filed their Motions for Final Judgment Based on the Administrative Record. R. Docs. 42, 43, 45, 47.

## III.   LAW AND ANALYSIS

### A.  Standard of Review

ERISA "provides federal courts with jurisdiction to review benefit determinations by fiduciaries or plan administrators." *Estate of Bratton v. Nat'l Union Fire Ins. Co. of Pittsburgh*,

*PA*, 215 F.3d 516, 520–21 (5th Cir. 2000) (citing 29 U.S.C. § 1132(a)(1)(B). "[A] denial of benefits challenged under § 1132(a)(1)(B) is generally reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber Co. v. Bruch*, 389 U.S. 101, 115 (1989). "[W]hen an administrator has discretionary authority with respect to the decision at issue, the standard of review should be one of abuse of discretion." *Vega v. Nat. Life Ins. Services, Inc.*, 188 F.3d 287, 295 (5th Cir. 1999). Because both parties agree that Unum did not have discretionary authority under the plans, *see* R. Docs. 43-2 at 3, 56-1 at 3, the Court must review Unum's determinations *de novo*. *See Wildbur v. ARCO Chem. Co.*, 974 F.2d 631, 636 (5th Cir. 1992).

Under a *de novo* standard of review, the Court must "determine whether the administrator made a correct decision." *Pike v. Hartford Life & Accident Ins. Co.*, 368 F. Supp. 3d 1018, 1030 (E.D. Tex. 2019) (quoting *Niles v. Am. Airlines, Inc.*, 269 Fed. Appx. 827, 832 (10th Cir. 2008)). This involves the Court "independently weigh[ing] the facts and opinions in the administrative record to determine whether the claimant has met [her] burden of showing that [s]he is disabled within the meaning of the policy." *Id.* (internal citation omitted). Under this standard of review, the burden of proof is on the plaintiff to prove that she is disabled, which she must prove by a preponderance of the evidence. *Id.* at 1030–31 (citing *Gilewski v. Provident Life & Accident Ins. Co.*, 683 Fed. Appx. 399, 406 (6th Cir. 2017)).

### B.  The Administrative Record

Regarding what evidence this Court may review in evaluating the plan administrator's decision, "when assessing factual questions, the district court is constrained to the evidence before the plan administrator." *Vega*, 188 F.3d at 299. A court may not "stray from the [administrative record] but for certain limited exceptions, such as the admission of evidence related to how an

administrator has interpreted terms of the plan in other instances, and evidence, including expert opinion, that assists the district court in understanding the medical terminology or practice related to a claim." *Bratton*, 215 F.3d at 521. Nevertheless, for purposes of this Court's review, the administrative record consists of all "relevant information made available to the administrator prior to the complainant's filing of a lawsuit and in a manner that gives the administrator a fair opportunity to consider it." *Vega*, 188 F.3d at 300. As the Fifth Circuit has explained,

> [b]efore filing suit, the claimant's lawyer can add additional evidence to the administrative record simply by submitting it to the administrator in a manner that gives the administrator a fair opportunity to consider it. In *Moore*, we said that 'we may consider only the evidence that was available to the plan administrator in evaluating whether he abused his discretion in making the factual determination.' If the claimant submits additional information to the administrator, however, that additional information should be treated as part of the administrative record. Thus, we have not in the past, nor do we now, set a particularly high bar to a party's seeking to introduce evidence into the administrative record . . . . [I]n restricting the district court's review to evidence in the record, we are merely encouraging attorneys for claimants to make a good faith effort to resolve the claim with the administrator before filing suit in district court.

*Id.* The court may therefore consider relevant evidence if it was made available to the plan administrator prior to the plaintiff's filing suit and was presented in such a way as to afford the plan administrator a fair opportunity to consider the evidence. *Id.*

In the instant case, the parties agree that the Administrative Record is comprised of the four-part binders filed under seal into the record. *See* R. Doc. 48.

### C. Was the Plan Administrator's decision to deny Plaintiff benefits correct under a *de novo* standard of review?

#### 1. STD Benefits

The Unum Short-term Policy states, in relevant part,

You are disabled when Unum determines that:
- you are **limited** from performing the **material and substantial duties** of your **regular occupation** due to your **sickness** or **injury**; . . .
**MATERIAL AND SUBSTANTIAL DUTIES** means duties that:
- are normally required for the performance of your regular occupation and
- cannot be reasonably omitted or modified. . . .

11

>**REGULAR OCCUPATION** means the occupation you are routinely performing when your disability begins.

UA-CL-STD-000159, UA-CL-STD-000169–70 (emphasis in original).

In denying Plaintiff's claim for STD benefits, Unum found that Plaintiff did not meet the definition of "disabled" under its Short-term Policy based on a review of Plaintiff's records. *See* UA-CL-STD-000186–89. Specifically, Unum decided that Plaintiff's physical exam, which had been conducted two weeks before her last day of work, "did not confirm [she] had any difficulty with balance or standing," Plaintiff's doctor "indicated [her] symptoms were improved since April 2015," and Plaintiff's MS "was noted to be clinically stable." UA-CL-STD-000186. Unum concluded that the MS symptoms that Plaintiff was experiencing "did not indicate [she] ha[d] a functional loss that would prevent [her] from performing the material and substantial duties of [her] occupation," and Unum therefore denied Plaintiff's claim for STD benefits. UA-CL-STD-000186.

Plaintiff argues that Unum's denial of her claim for STD benefits was unsupported by any credible evidence and amounted to behavior that was "arbitrary, capricious, and malicious." R. Doc. 43-2 at 9, 24. Specifically, Plaintiff contends that "Unum's denial of STD benefits was based upon nothing more than opinions by laymen with no medical or occupational expert credentials." R. Doc. 43-2 at 10–11. Plaintiff notes that Unum did not have any medical doctors review Plaintiff's file before denying Plaintiff's STD benefits claim and no Unum physicians ever examined her in person. R. Doc. 43-2 at 11. Moreover, when Plaintiff appealed Unum's denial of her STD benefits claim, Unum's Lead Appeal Specialist upheld the denial, informing Plaintiff that: "It was determined that you did not have a functional loss that would prevent you from performing the duties of your occupation." R. Doc. 43-2 at 12. Once again, the Unum employee who reviewed Plaintiff's file at the appeals stage was not a medical doctor and had no MS

expertise. In further support of her argument, Plaintiff points to the fact that she applied for and received—without dispute—a total disability award from the Social Security Administration because of her MS. R. Doc. 43-2 at 9.

After reviewing the administrative record, the Court finds that the overwhelming evidence supports the conclusion that Plaintiff suffers from issues with balance and gait, an inability to stand for extended periods of time, fatigue, and memory changes due to her MS, rendering her unable to adequately perform the material and substantial duties of a property manager. *See* UA-CL-STD-000329. Dr. Bagert, Plaintiff's treating physician, concluded that Plaintiff's job was a hindrance to her well-being and that she should cease working by September 25, 2015. UA-CL-STD-000135, UA-CL-STD-000186. Dr. Bagert provided an APS in support of Plaintiff's STD claim. UA-CL-STD-000023. Similarly, Dr. Davis also provided an APS to Unum, noting that Plaintiff had reported problems with her balance, standing for extended periods of time, and fatigue, as well as some memory changes. UA-CL-STD-000022.

Moreover, as previously noted, no Unum physicians ever examined Plaintiff in person; indeed, no Unum physicians ever even spoke to a single one of Plaintiff's treating physicians. In *Burdett v. Unum Life Insurance Company of America*, No. 06–6138, 2008 WL 4469094, at *11 (E.D.La. Sept. 30, 2008), the district court reversed a plan administrator's denial of physical disability benefits under ERISA in part because the administrator had reached its decision by relying exclusively on the opinions of its own physicians, none of whom had ever treated the plaintiff in person. In addition, the plan administrator had simply disregarded as unreliable the opinions of the plaintiff's treating physicians. *Id.* In finding that the plan administrator had abused its discretion in denying benefits, the court also noted as persuasive the fact that the Social Security Administration had granted the plaintiff disability benefits. *Id.* Although "courts have no warrant to require administrators automatically to accord special weight to the opinions of a claimant's

13

physician," a plan administrator "may not arbitrarily refuse to credit a claimant's reliable evidence, including the opinions of treating physicians." *Schexnayder v. Hartford Life & Acc. Ins. Co.*, 600 F.3d 465, 469 (5th Cir. 2010) (quoting *Black & Decker Disability Plan v. Nord,* 538 U.S. 822, 834 (2003)).

In the instant case, Unum relied on the conclusions of its "clinical consultants"—who were not medical doctors or MS specialists—and disregarded the opinions of Plaintiff's treating physicians. For example, before determining that Plaintiff was capable of returning to work full-time, Unum's claims consultant, Andrew Frick: (1) did not examine Plaintiff in person or otherwise correspond with Plaintiff in any way; (2) did not discuss Plaintiff's condition with any of her treating physicians; and (3) did not have a medical doctor or MS specialist review Plaintiff's medical records. Moreover, after Plaintiff appealed Unum's decision denying her claim for STD benefits, Jacqueline Ballback reviewed Plaintiff's complete file but again did not examine Plaintiff herself, did not speak with Plaintiff's treating physicians, and did not have a medical doctor or MS specialist review the file. UA-CL-STD-000322–25. Finally, although not dispositive, it is persuasive that the Social Security Administration has granted Plaintiff a total disability benefits award because of her MS. *See* R. Doc. 43-2 at 9.

In conclusion, after conducting an exhaustive review of the administrative record and under a *de novo* standard of review, the Court determines that Unum did not make a "correct decision" in denying Plaintiff's claim for STD benefits. *See Pike*, 368 F. Supp. 3d at 1030. The record is replete with medical evidence supporting Plaintiff's contention that her balance and gait issues, inability to stand for extended periods of time, fatigue, and memory changes due to her MS have rendered her unable to perform the material and substantial duties of a Sealy property manager. Despite being presented with such significant and objective medical evidence of Plaintiff's disability, Unum instead relied on selective, inconclusive and arbitrary facts in determining that

the record evidence failed to support Plaintiff's reported symptoms. After "independently weigh[ing] the facts and opinions in the administrative record to determine whether the claimant has met [her] burden of showing that [s]he is disabled within the meaning of the policy," *id.*, the Court finds that Plaintiff has met her burden. As a result, Unum's decision will be reversed, and Plaintiff's STD benefits will be reinstated.

### 2. *LTD Benefits*

Pursuant to Unum's Long-term Policy, which took effect on April 1, 2015, pre-existing conditions are not covered and exist when a person: (1) "received medical treatment, consultation, care or services including diagnostic measures, or took prescribed drugs or medicines in the 3 months just prior to [his/her] effective date of coverage" and (2) "[t]he disability begins in the first 12 months after [his/her] effective date of coverage." UA-CL-LTD-000137. Moreover, Unum's Long-term Policy contains a "continuing coverage" clause stating that Unum will pay long-term disability benefits for what would be considered a pre-existing condition under the Long-term Policy if it would not be considered a pre-existing condition under the Prudential Plan's definition. UA-CL-LTD-000139–40. Under the Prudential Plan, which took effect on December 1, 2014, a claimant has a pre-existing condition if numbers 1 and 2 below are both met:

1. (a) [The person] received medical treatment, consultation, care or services, including diagnostic measures, or took prescribed drugs or medicines, or followed treatment recommendation in the 3 months just prior to [his/her] effective date of coverage; or (b) [The person] had symptoms for which an ordinarily prudent person would have consulted a health care provider in the 3 months just prior to [his/her] effective date of coverage.
2. [The person's] disability begins within 12 months of the date [his/her] coverage under the plan becomes effective.

UA-CL-LTD-000187.

In denying Plaintiff's claim for LTD, Unum found that Plaintiff's MS was an excluded "pre-existing condition" under the terms of both Unum's Long-term Policy and Sealy's prior

insurance carrier's plan ("the Prudential Plan"). UA-CL-LTD-000862–68. Specifically, Unum concluded that because Plaintiff had been treated for "neurological symptoms including unsteady gait and numbness on the right side" on January 21, 2015 and January 26, 2015, and she had been "referred to Dr. Bagert for 'possible MS'" on February 20, 2015, she had a pre-existing condition that precluded her from coverage under the Long-term Policy. UA-CL-LTD-000863. Moreover, Unum determined that because Plaintiff had been treated for an eye condition called Pars Planitis on November 20, 2014—which Unum contends was "directly related" to Plaintiff's MS— Plaintiff's condition of MS was pre-existing and therefore excluded from coverage. UA-CL-LTD-000864. When Plaintiff appealed Unum's denial of her LTD benefits claim, Unum upheld its denial based on Plaintiff's treatment for Pars Planitis, but also claimed—for the first time—that Plaintiff's October 24, 2014 visit to a doctor's office for "peripheral neuropathy" also supported a denial of Plaintiff's claim. UA-CL-001122–29.

Plaintiff argues that Unum's denial of her claim for LTD benefits was "contrary to the medical evidence, medically unsupported, and manifestly erroneous." R. Doc. 43-2 at 14. Specifically, Plaintiff contends that there is "no credible medical support for Unum's opinions, which are directly contrary to those of Ochsner's neurological specialists who diagnosed and treated Bayer, especially Dr. Bagert, an MS expert." R. Doc. 43-2 at 14. Plaintiff again notes that no medical doctor or MS specialist made or contributed to Unum's decision—either at the claims or appeals stage. R. Doc. 43-2 at 14, 17.

After reviewing the administrative record, the Court finds that the evidence does not support the conclusion that Plaintiff's MS was a "pre-existing condition" under the Prudential Plan—for which Unum was subject to a "continuing coverage" clause—such that it warranted a denial of her LTD benefits claim. Plaintiff's MS would be considered a "pre-existing condition" under Unum's Long-term Policy because Plaintiff had been treated for "neurological symptoms

including unsteady gait and numbness on the right side" on January 21, 2015 and January 26, 2015, and she had been "referred to Dr. Bagert for 'possible MS'" on February 20, 2015, which is within the relevant look-back period for the Unum Long-term Policy. UA-CL-LTD-000863. However, the Court concludes that there is no evidence to show that Plaintiff's MS was a pre-existing condition under the relevant look-back period for the Prudential Plan. Although Unum tries to claim that Plaintiff's treatment for Pars Planitis in November 2014 was "directly related" to her MS, Dr. Bagert clarified that although Pars Planitis is a symptom of possible MS, not all patients who have Pars Planitis have MS and vice versa and Plaintiff's onset date for MS was January 26, 2015. *See* UA-CL-LTD-001106.

Moreover, as previously noted, no Unum physicians ever examined Plaintiff in person; indeed, no Unum physicians ever even spoke to a single one of Plaintiff's treating physicians. As discussed earlier, in *Burdett*, the district court reversed a plan administrator's denial of physical disability benefits under ERISA in part because the administrator had reached its decision by relying exclusively on the opinions of its own physicians, none of whom had ever treated the plaintiff in person, and disregarded the opinions of the plaintiff's treating physicians. 2008 WL 4469094, at *11. Although "courts have no warrant to require administrators automatically to accord special weight to the opinions of a claimant's physician," a plan administrator "may not arbitrarily refuse to credit a claimant's reliable evidence, including the opinions of treating physicians." *Schexnayder*, 600 F.3d at 469.

In the instant case, Unum relied on the conclusions of its "clinical consultants"—who were not medical doctors or MS specialists—and disregarded the opinions of Plaintiff's treating physicians. For example, the Unum employee who concluded that Plaintiff's "treatment for Pars Planitis was directly related to [Plaintiff's] condition of [MS], and the treatment occurred during the 3 months prior to the effective date of coverage under the prior carrier's policy," UA-CL-LTD-

000864, was a "Disability Benefits Specialist" named Inga Stevens who does not appear to have any medical degree. Moreover, although Unum asserts that it reached this conclusion based on a review by Unum's clinical consultant, Shannon Pitula, RN, BSN, it is clear that Ms. Pitula, too, is not a medical doctor, let alone an MS specialist. Similarly, when Plaintiff appealed Unum's denial of her LTD benefits claim, Unum's Lead Appeals Specialist Kathy Durrell again relied on Plaintiff's treatment for Pars Planitis to uphold the denial, but also concluded that Plaintiff's October 24, 2014 visit to a doctor's office for "peripheral neuropathy" supported a denial of Plaintiff's claim. UA-CL-001124–29. Ms. Durrell based her conclusion in part on another clinical consultant, Margaret Maxwell, RN, BSN, MS, who reviewed Plaintiff's medical records but also did not conduct an examination of Plaintiff herself. UA-CL-001109–17; *see also* R. Doc. 47-1 at 13.

Although Unum was not required to "automatically [] accord special weight to the opinions of [Plaintiff's] physician," Unum also "may not arbitrarily refuse to credit [Plaintiff's] reliable evidence, including the opinions of treating physicians," *Schexnayder*, 600 F.3d at 469, as it appeared to do here. Plaintiff's treating physician, Dr. Bagert, has 16 years' experience as a physician specializing in the diagnosis and treatment of MS and moreover, she has been the Program Director of the Ochsner Multiple Sclerosis Center since 2010. Despite Dr. Bagert's plethora of experience as a physician and MS specialist, Unum has arbitrarily disregarded her opinions in this case in favor of clinical consultants who are not medical doctors, let alone MS specialists.

In conclusion, after conducting an extensive review of the administrative record and under a *de novo* standard of review, the Court determines that Unum did not make a "correct decision" in denying Plaintiff's claim for LTD benefits. *See Pike*, 368 F. Supp. 3d at 1030. The record is replete with medical evidence supporting Plaintiff's argument that her MS is not a pre-existing

condition under the Prudential Plan and Unum failed to have a medical doctor or MS specialist examine Plaintiff—or even review her medical records—before reaching the conclusion that her treatment for Pars Planitis and doctor's visit for peripheral neuropathy were directly related to her MS. Accordingly, after "independently weigh[ing] the facts and opinions in the administrative record to determine whether the claimant has met [her] burden of showing that [s]he is disabled within the meaning of the policy," *id.*, and is not subject to the pre-existing condition exceptions, the Court finds that Plaintiff has met her burden. As a result, Unum's decision is reversed, and Plaintiff's LTD benefits are reinstated.

### D.   Is Sealy jointly liable for Unum's improper denial of Plaintiff's benefits claims?

Under ERISA, the plan administrator is defined as "the person specifically so designated by the terms of the instrument under which the plan is operated." 29 C.F.R. § 2510.3-16. In its ERISA Plan, Sealy is named as the "Plan Administrator." UA-CL-LTD-000150. However, as discussed earlier, Sealy delegated its day-to-day administrative responsibilities to Unum by selecting Unum to serve as its third-party administrator. The Fifth Circuit has held that "if an entity or person other than the named plan administrator takes on the responsibilities of the administrator, that entity would also be liable for benefits." *LifeCare Mgmt. Servs. LLC*, 703 F.3d at 835. Nevertheless, as Plan Administrator, Sealy still owed a fiduciary duty to its plan participants and under ERISA, a fiduciary may be held liable to the Plan for breach of any fiduciary responsibilities, obligations, or duties imposed by the statute. 29 U.S.C. § 1109(a). Moreover, a fiduciary may also be held liable for a breach of fiduciary responsibility by a co-fiduciary in the following circumstances: (1) if the fiduciary knowingly participates in, or conceals, the breach of the other fiduciary, (2) if the fiduciary's own breach enables another fiduciary to commit a breach, or (3) "if [the fiduciary] has knowledge of a breach by such other fiduciary, unless he makes reasonable efforts under the circumstances to remedy the breach." 29 U.S.C. § 1105(a).

19

In this case, as a threshold matter, the Court notes that Plaintiff's theory of joint liability against Sealy was not included in her original Complaint. *See* R. Doc. 1. In fact, Plaintiff's only stated cause of action against Sealy was for statutory civil penalties relating to Sealy's alleged failure to provide plan documents to Plaintiff as required under ERISA. R. Doc. 1 at 9. Moreover, Plaintiff concedes that she requested—and received—the Plan documents in question from Unum. R. Doc. 53 at 2. Therefore, it appears as though this cause of action against Sealy is now moot. With respect to Plaintiff's theory of joint liability against Unum and Sealy, as a general principle, a basis for liability that is not raised in a Complaint but is only raised in response to a motion for summary judgment is not properly pled. *See, e.g., De Franceschi v. BAC Home Loans Servicing, L.P.*, 477 F. App'x 200, 204 (5th Cir. 2012) ("A properly pleaded complaint must give 'fair notice of what the claim is and the grounds upon which it rests.' . . . Accordingly, district courts do not abuse their discretion when they disregard claims or theories of liability not present in the complaint and raised first in a motion opposing summary judgment.") (internal citation omitted). No discovery has been taken regarding Sealy's alleged joint liability and it is prejudicial to Sealy to now introduce a new theory of liability months after discovery has completed. The Court thus concludes that because Plaintiff did not plead this theory of liability against Sealy in her Complaint, it is not appropriate to consider it now that it is "raised first in a motion opposing summary judgment." *See id.*

Nevertheless, even if the Court were to assess whether Sealy, as a fiduciary, may be held liable for the breaches of Unum in this case, the Court concludes that there is not sufficient evidence to reach this conclusion. For Sealy to be held liable for Unum's breach of fiduciary responsibility, Sealy needs to have either: (1) knowingly participated in, or concealed, Unum's breach, (2) engaged in a breach of its own fiduciary duty that enabled Unum to commit a breach, (3) or have knowledge of Unum's breach and not have made reasonable efforts to remedy the

breach. *See* 29 U.S.C. § 1105(a). Plaintiff argues that Sealy chose Unum as the insurance company for its plan participants based on Unum having low rates rather than fair and accurate claims processing, and therefore, there was a conflict of interest between Sealy and Plaintiff that rendered Sealy jointly liable to Plaintiff for Unum's misconduct. R. Doc. 43-2 at 4. However, there are no facts to support Plaintiff's claim—other than mere speculation of Sealy's motives in choosing Unum as an insurer—because discovery was not conducted on this issue. Moreover, the Court cannot point to any facts that show that Sealy should be held liable for Unum's breach of fiduciary responsibility for the same reason: sufficient discovery on this issue was not conducted because it was not pled in Plaintiff's Complaint.

### E.  Attorneys' Fees

"Under ERISA, the district court has the discretion to award attorney's fees to either party." *Salley v. E.I. DuPont de Nemours & Co.*, 966 F.2d 1011, 1016–17 (5th Cir. 1992) (citing 29 U.S.C. § 1132(g)(1)).  The award of attorney's fees depends on the facts of each case. As the Fifth Circuit has explained, the district court should consider the following factors when evaluating whether to shift attorneys' fees:

> (1) the degree of the opposing parties' culpability or bad faith; (2) the ability of the opposing parties to satisfy an award of attorneys' fees; (3) whether an award of attorneys' fees against the opposing parties would deter other persons acting under similar circumstances; (4) whether the parties requesting attorneys' fees sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA itself; and (5) the relative merits of the parties' position.

*Id.* (quoting *Iron Workers Local No. 272 v. Bowen,* 624 F.2d 1255, 1266 (5th Cir. 1980), *appeal after remand,* 695 F.2d 531 (11th Cir. 1983).

After reviewing the evidence and the entire record, the Court finds that an award of attorneys' fees to Plaintiff is appropriate in this case. Unum deliberately ignored medical evidence supporting the conclusion that Plaintiff suffers from issues with balance and gait, an inability to

stand for extended periods of time, fatigue, and memory changes due to her MS, rendering her unable to adequately perform the material and substantial duties of a property manager as required to establish her STD benefits claims. Moreover, Unum provided no credible medical support for its opinion that Plaintiff's MS was a "pre-existing condition" under the Prudential Plan for the relevant look-back period such that it warranted a denial of her LTD benefits claim. Although no Unum physician ever examined Plaintiff in person or spoke to Plaintiff's treating physicians, and no medical doctor or MS specialist even reviewed Plaintiff's file, Unum nevertheless summarily dismissed Plaintiff's claims as well as the supporting opinions of her treating physicians. Further, in concluding that the Plaintiff was not disabled, Unum not only disregarded considerable objective medical evidence, but it also relied on the assumptions of "clinical consultants" who did not provide medical support for how they reached these conclusions. Additionally, there is no evidence to suggest that Unum would be unable to afford the payment of reasonable attorneys' fees. Finally, awarding attorneys' fees in this case is likely to serve a significant deterrent function for Unum and other insurers in similar situations. *See Servat v. Am. Heritage Life Ins. Co.*, Civ A. No. 04–2928, 2007 WL 2480342, at *21 (E.D.La. Aug. 28, 2007) ("[R]endering an award of attorney's fees in this case may cause other insurers to improve upon similar claim review processes to the benefit of many insureds.").

Accordingly, the Court will award attorneys' fees to Plaintiff in this case. In order to determine the amount of attorneys' fees that are reasonable in this case, Plaintiff is directed to submit, in writing, an accounting of the attorneys' fees expended along with a memorandum supporting this claim by no later than Friday, June 5, 2020. Objections by Defendant, if any, shall be filed no later than Friday, June 12, 2020.

## IV.    CONCLUSION

For the reasons stated above,

**IT IS ORDERED** that Plaintiff Kim Bayer's Motion for Summary Judgment and Final Judgment on the Administrative Record, R. Doc. 43, is hereby **GRANTED IN PART**. Plaintiff's Motion is granted with respect to her claims against Defendant Unum Life Insurance Company of America and denied with respect to her claims against Defendant Sealy Operating III, Inc.

**IT IS FURTHER ORDERED** that Defendant Sealy Operating III, Inc.'s Motion for Final Judgment on the Administrative Record, R. Doc. 42, is hereby **GRANTED**.

**IT IS FURTHER ORDERED** that Defendant Unum Life Insurance Company of America's Motion for Final Judgment the Administrative Record for Short Term Disability Benefits Claim, R. Doc. 45, is hereby **DENIED**.

**IT IS FURTHER ORDERED** that Defendant Unum Life Insurance Company of America's Motion for Final Judgment the Administrative Record for Long Term Disability Benefits Claim Based on Pre-Existing Condition, R. Doc. 47, is hereby **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiff's claim for attorneys' fees against Defendant Unum Life Insurance Company of America is **GRANTED**, subject to the additional briefing schedule set forth in this Order.


New Orleans, Louisiana, this 20th day of May, 2020.


_____
THE HONORABLE ELDON E. FALLON
UNITED STATES DISTRICT JUDGE

23