**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **KIM WILLIAMS BAYER** | **CIVIL ACTION** |
| **VERSUS** | **NO: 18-09702** |
| **UNUM LIFE INSURANCE COMPANY OF AMERICA, ET AL.** | **SECTION: "L" (4)** |

**REPORT AND RECOMMENDATION**

Before the Court is **Application for Attorneys' Fees and Costs (R. Doc. 64)** filed pursuant to the order of the District Judge (Rec. doc. 61) and referred to the undersigned, to submit proposed findings and recommendations for disposition pursuant to Title 28 U.S.C. 636(b)(1)(B) and (C), 1915e (2), and 1915A, and as applicable, Title 42 U.S.C. 1997e(c)(1) and (2). *See* R. Doc. 75. The application is opposed. Rec. doc. 68. The Plaintiff filed a reply to the memorandum. Rec. doc. 72. This matter was submitted and heard on the briefs.

## I. Factual Summary

This is an ERISA dispute over the denial of short-term and long-term disability benefits to Plaintiff Kim Bayer ("Bayer"), who has Multiple Sclerosis, a senior property manager for Defendant Sealy Operating III ("Sealy"). Defendant Unum Life Insurance Company of America ("Unum") provided insurance coverage to Sealy under Group Short-term and Long-term disability plan ("Long-term Policy"). Sealy, the Plan Administrator for the Short-term Policy and Long-term Policy, denied Bayer's request for disability insurance and she sought review in this Court. After considering all of the evidence, the District Judge ruled in favor of Bayer and against Unum and further denied relief against the claim's administrator Sealy. *See* Rec. doc. 61.

Bayer now seeks attorney's fees and expenses. Bayer contends that this case came by unusual circumstances. For example, Bayer contends that although she had competent counsel during the administrative phase, Bayer's original counsel did not realize that her file was not reviewed by a physician or an MS specialist. Bayer's current counsel contends Unum deceived Plaintiff about the undertaking of medical review. Bayer's counsel indicates this should be incorporated in the evaluation of risk he took in taking on this claim. Rec. Doc. 64. Bayer's counsel contends that she signed a 1/3 contingency agreement, which, based upon the Court's award of Long-term and Short-term disability benefits, would amount to an award of $219,633.00 in attorney's fees. Bayer's counsel, however, contends, that after the exercise of billing judgment Plaintiff only seeks $192,150.50 instead. *Id.*

Unum opposes the reasonableness of the fee sought by Bayer noting that there is a significant difference between the number of hours spent on the case between plaintiff and defense counsel. Rec. doc. 68. Unum contends that Bayer's counsel spent 731.20 hours on this case is excessive because the case simply involved the judicial review of an administrative decision to deny benefits. *Id* .Unum contends that the billing records suggest that the matter was over staffed with three attorneys who often engaged in duplicative work as well as excessive legal research and discovery. *Id.*

## II. Standard of Review

The criteria to be applied in determining the proper amount of fees to be awarded are articulated for this Circuit in *Johnson v. Georgia Highway Express, Inc*., 488 F.2d 714 (5th Cir.1974) and is called the Lodestar Method. The Fifth Circuit has approved the use of the lodestar calculation in ERISA cases, even if it has not been explicitly required. *See Salley v. E.I. DuPont de Nemours & Co*., 966 F.2d 1011, 1016 (5th Cir. 1992). *See also Humphrey v. United Way of Texas Gulf Coast*, 802 F. Supp. 2d. 847 (S.D. Texas July 28, 2011) ("In the Fifth Circuit, the lodestar method is used to determine an award under ERISA § 502(g).").

The Supreme Court has indicated that the "lodestar" calculation is the "most useful starting point" for determining the award of attorney's fees. *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). The lodestar equals "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Id*. The lodestar is presumed to yield a reasonable fee. *La. Power & Light Co. v. Kellstrom*, 50 F.3d 319, 324 (5th Cir. 1995). After determining the lodestar, the Court must then consider the applicability and weight of the twelve factors set forth in *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974).[1] The Court can make upward or downward adjustments to the lodestar figure if the *Johnson* factors warrant such modifications. *See Watkins v. Fordice*, 7 F.3d 453, 457 (5th Cir. 1993). However, the lodestar should be modified only in exceptional cases. *Id.*

After the calculation of the lodestar, the burden then shifts to the party opposing the fee to contest the reasonableness of the hourly rate requested or the reasonableness of the hours expended "by affidavit or brief with sufficient specificity to give fee applicants notice" of the objections. *Rode v. Dellarciprete*, 892 F.2d 1177, 1183 (3d Cir. 1990).

## III. <u>Analysis</u>

### A. <u>Reasonableness of the Hourly Rates</u>

Plaintiffs seek to recover the attorney's fees for Dominic Gianna ("DG"), Lee Rudin ("LR"), and Courtney Payton ("CP") as a result of work performed on the matter. The rates billed to the client range from $245 to $375. The Plaintiff states that the customary hourly rates for Gianna ranged from $225 to $495; Rudin's rates ranged from $225 to $350 per hour; and Payton's rates ranged from $185

[1] The twelve *Johnson* factors are: (1) the time and labor involved; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal services properly; (4) the preclusion of other employment by the attorney due to this case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations; (8) the amount involved and results obtained; (9) the experience, reputation, and ability of counsel; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *See Johnson*, 488 F.2d at 717-19.

to $350 per hour. Rec. doc. 64, p. 5. Regarding the actual rates sought in this case, Gianna, Rudin and Payton seeks $350, $305, and $275 per hours respectively. *Id.* Bayer seeks also to recover $110 per hour for the work of its paralegals Diane Abraham and Karen Seghers. Rec. doc. 64, p. 8.

Unum does not challenge the reasonableness of the rates charged. *See* Rec. doc. 68.Unum only challenges the reasonableness of the hours expended for performing the work. *See id.*

Where an attorney's customary billing rate is the rate at which the attorney requests the lodestar to be computed and that rate is within the range of prevailing market rates, the court should consider this rate when fixing the hourly rate to be allowed. When that rate is not contested, it is *prima facie* reasonable." *La. Power & Light*, 50 F.3d at 328; *see also Powell v. C.I.R.*, 891 F.2d 1167, 1173 (5th Cir. 1990) (quoting *Islamic Ctr. of Mississippi v. City of Starkville*, 876 F.2d 468, 469 (5th Cir. 1989)).

Because Unum does not challenge the hour rates, the rates sought by Gianna ($350), Rudin ($305), and Payton ($275) are, therefore, *prima facia* reasonable. The Lodestar will be determined by using the *prima facia* reasonable rates.

**B. <u>Determining the Reasonable Hours Expended</u>**

The Plaintiff acknowledges that her attorneys do not have extensive experience in ERISA litigation, though they have extensive experience in insurance litigation and some limited ERISA experience. *See* Rec. doc. 64, p. 6. Plaintiff seeks to recover fees for three attorneys and two paralegals who worked on this matter. Rec. doc. 64. Although Plaintiff originally argues that her attorneys are entitled to $192,150.50 based on the Lodestar in this case, she then concludes that her counsel is entitled to an award of $201,832.00 in fees plus $2,240.00 in costs. Rec. doc. 64, pp. 4, 18.

Bayer indicates that her attorneys exercised "billing judgment" and do not seek to recover attorneys fees for (1) clerical/administrative entries performed by attorneys or paralegals; (2) time

spent compiling and reviewing bills for the exercise of billing judgment purposes; (3) vague billing entries; (4) duplicative billing entries; or (5) "ramp up time" to learn about specific ERISA matters. Rec. doc. 64, p. 10. Bayer points out that her attorneys exercised billing judgment by delegating tasks to paralegals that were within there purview and by limiting written discovery. *Id.* Bayer further suggest to the undersigned that since it attempted to exercise billing judgment that, rather than employing a percentage reduction in the attorney's time, the Court address the entries individually Rec. doc. 64, pp. 10-11 (citing *Galeas v. Staff Pro, LlC,* 2018 U.S. Dist. LEXIS 172643, *6 (E.D. La. Sep. 12, 2018)).

Unum contends that Bayer's attorneys have charged more than twice the fees then they have billed for the case. Rec. doc. 68. Unum contends that Bayer seeks to recover for research in areas that were of no legal significance and have nothing to do with the issues in the case such as "bad faith" allegations and ERISA. Rec. doc. 68, pp. 6-7. Unum also contends that much of the work is duplicative and there was excessive discovery. *See id.* Unum contends that Plaintiff's actual recovery in this case will only be $135,000 and not $658,000 as suggested by Plaintiff's counsel. Rec. doc. 68, p. 9. Unum further contends that Bayer's attorney fee award should be $100,000. rec. doc. 68, p. 10.

The first issue is whether the reasonableness of the fee should be determined by using the contingency fee agreement or the Lodestar method. The parties' conveniently use the method of their choice without addressing this issue. However, in the Fifth Circuit, the lodestar method is used to determine an award under ERISA § 502(g). *Lain v. UNUM Life Insurance Co. of America,* 279 F.3d 337 (5th Cir. 2002) (citing *Wegner v. Standard Ins. Co.*, 129 F.3d 814, 822 (5th Cir. 1997)).

**i. Billing Judgment**

Billing judgment requires documentation of the hours charged and of the hours written off as unproductive, excessive, or redundant. *Hernandez v. U.S. Customs & Border Prot. Agency*, No. 10–

4602, 2012 WL 398328, at *14 (Barbier, J.) (E.D. La. Feb. 7, 2012); *Guity v. Lawson Envtl. Serv., LLC*, 50 F. Supp. 3d 760, 764 (Barbier, J.) (E.D. La. 2014). Hours that are not properly billed to one's client also are not properly billed to one's adversary. *Hensley*, 461 U.S. at 434. The proper remedy for omitting evidence of billing judgment does not include a denial of fees but, rather, a reduction of the award by a percentage intended to substitute for the exercise of billing judgment. *Saizan v. Delta Concrete Prods. Co., Inc*., 448 F.3d 795, 799 (5th Cir. 2006) (per curiam). Alternatively, this Court can conduct a line-by-line analysis of the time report. *See Green v. Administrators of the Tulane Educational Fund*, 284 F.3d 642 (5th Cir. 2002).

The billing records illustrate that limited billing judgment was exercised by Bayer's counsel. Beginning on September 10, 2018 through January 24, 2020, only 40.2 hours, for a total of $11,055.00, were not charged out of the total 795.8 hours billed. While Bayer indicates that she does not seek attorneys' fees for clerical tasks, reviewing the bills, vague entries, duplicative work, or "ramp up" time to learn about ERISA claims, the time records show that time was only written off for Payton, totaling 40.2 hours and equaling $11,055.00. Plaintiff's counsel, however, indicates that they exercised billing judgment and actually wrote off $11,146.50, or 40.5 hours, in legal research.[2] These exercises of billing judgment are indicated with a "NC"—no charge on the attorneys' billings sheets. The $91.50 difference is not identified in the billing sheet as "no charge" (NC) and cannot be determined.

Further, while Bayer contends that her counsel exercised billing judgment, her counsel actually failed to reduce the hours by the billing judgment exercised only deducting NC from the final

[2] 9/10/2018-CP (1.50 hours); 9/10/2018-CP (3.20 hours); 9/10/2018-CP (2.20 hours); 9/13/2018-CP (2.40 hours); 9/14/2018-CP (3.10 hours); 9/14/2019-CP (1.60 hours); 9/17/2018-CP (4.20 hours); 10/10/2018-CP (2.10 hours); 1/16/2019-CP (1.20 hours); 2/22/2019-CP (3.30 hours); 3/6/2019-CP (2.50 hours) 3/11/2018- CP (4.30 hours); 3/14/2019-CP (3.50 hours); 3/18/2019-CP (.80 hours); 5/29/2019-CP (1.80 hours); 6/13/2019-CP (1.40 hours); 1/24/2020-CP (1.10 hours).

billing amount. The entries identified as "no charge" total 40.2 hours for Payton as reflected on the timesheets. Consequently, Payton's hours will be reduced accordingly for the proper billing judgment by 40.2 hours.

**ii. <u>Legal Research</u>**[3]

Bayer contends that Unum may contend that her counsel conducted legal research concerning ERISA that a more experienced lawyer would not have done. She contends that this research should be called "ramp up" time and that this time was compensated by not charging for 40.5 hours of "ramp up" research. These hours, according to Plaintiff's counsel, total 40.5 hours and that the time for appropriate legal research total 127.7 hours. Rec. doc. 64, p. 11.

However, the time records also show that Bayer's counsel conducted research regarding bad faith allegation, which is not available under ERISA *See* Rec. doc. 64-4, Exhibit 4. These entries could be classified as "ramp up" charges and should have been excluded because they were not used in the course of the litigation. Beginning on August 27, 2018, Courtney Payton (12.7 hours) and Lee Rudin (2.40 hours) billed for research regarding bath faith allegations. The entries for bad faith research total 15.1 hours.[4] These hours will be disallowed.

In addition to charging for bad faith, on January 3, 2020, Payton billed 2.3 hours for research concerning a prospective class action. The hours billed for research a class action will be disallowed.

Bayer's counsel, Payton (5.8 hours) and Rudin (1.5 hours) also spent 7.3 hours researching the issue of the use of affidavits in a Motion for Summary Judgment in ERISA cases.[5] The Court

---

[3] The Court, here, notes, that the remaining analysis was broken down by the Court per entry per biller by hour. Plaintiff's submission fails to break down the analysis by biller, which is an error where each biller has a different rate.

[4] 08/27/2018-LR (1.20 hours); 8/27/2018-LR (1.20 hours)—this entry is also duplicative, 09/11/2018-CP (2.50 hours); 11/1/2019-CP (8.0 hours); 12/18/2019-CP (1.10 hours); 12/19/2019-CP (1.10 hours).

[5] 12/18/2019-CP (0.4 hours); 12/18/2019-CP (1.4 hours); 1/26/2020—CP (2.10 hours); 1/27/2020—CP (1.9 hours); 1/27/2020—LR (1.5 hours).

finds this category of research particularly odd since Federal Rule of Civil Procedure 56 governing summary judgments provides for the use of affidavits without distinguishing between the subject matter. Further, ERISA cases are usually resolved on cross motions for summary judgment. The 7.3 hours additional "ramp up" research shall also be disallowed.

Additionally, the time sheets illustrate that Bayer's attorneys conducted legal research on the abuse of discretion standard of review (5.9 hours);[6] the *de facto* plan administrator issue and third party plan administrator (21.3 hours);[7] and the "basics of ERISA" along with a written memo (8.0 hours).[8] Additionally, Bayer's attorneys billed (6.2 hours) for a 30(b)(6) deposition and motion that, according to Unum, was never actually served upon Defendants nor the motion filed according to the record.[9] This equals a total of 38.9 hours that shall be disallowed for CP.

The total additional hours to be disallowed equal 68.5 hours.

**iii. <u>Administrative time</u>**

The billing records also contain charges for administrative matters. However, a defendant should not be required to pay for time spent on administrative matters. *Lipsett v. Blanco*, 975 F.2d 934, 940 (1st Cir. 1992) (trial court improperly permitted billing of clerical work, such as court filings at lawyer rates).

The time sheets also show that administrative time was billed to the file. DA billed a total of 5.7 administrative hours.[10] In addition, KS billed 1 administrative hour[11] for a total of 6.7 hours.

---

[6] 09/14/2018-CP (2.10 hours); 3/13/2019-CP (2.20 hours); 3/15/2019-CP (1.60 hours).

[7] 10/15/2018-CP (1.60 hours); 10/16/2018-CP (2.1 hours); 10/16/2018-CP (2.50 hours); 3/13/2019-CP (1.20 hours); 11/11/2019-CP (3.20 hours); 11/11/2019-CP (1.50 hours); 11/22/2019-CP (2.50 hours); 1/2/2020-CP (4.20 hours).

[8] 9/18/2018-CP (8.0 hours).

[9] 12/18/2018-CP (1.2 hours); 12/18/2018-CP (1.20 hours); 12/18/2018-CP (2.3 hours); 1/16/2019-CP (1.1 hours); 2/5/2019-CP (0.4 hours).

[10] 7/24/2019-DA (0.2 hours); 9/14/2018-DA (0.1 hours); 9/14/2018-DA (0.20 hours); 9/18/2018-DA (1.90 hours); 10/18/2018 (0.8 hours); 10/19/2018-DA (0.80 hours); 2/1/2019-DA (0.50 hours); 5/31/2019-DA (0.30 hours); 7/29/2019-DA (0.20 hours); 10/18/2019-DA (0.20 hours); 10/18/2019-DA (0.2 hours); 1/30/2020-DA (0.30 hours).

[11] 01/24/2019-KS (0.10 hours); 3/19/2019-KS (0.30 hours); 4/9/2019-KS (0.10 hours); 4/9/2019-KS (0.5 hours).

The 6.7 hours for administrative work will be disallowed.

**iv. Excessive Discovery**

Bayer notes that its discovery was not excessive but necessary because of defendant's failure to produce records in the format that could be easily analyzed. In support of its hours billed regarding discovery, Bayer contends that Unum produced 116 documents and 2,392 pages from her Long-Term Disability Claims file. Bayer further contends that her counsel found invaluable information that led to her victory. Bayer contends that she should not suffer because the discovery was necessary for her to prevail.

The defendants contend because the case involved a *de novo* review, the Court was simply required to determine if Unum's decision was right or wrong. Therefore, any purported conflict of interest was irrelevant and yet Bayer's counsel's discovery largely fell under the category of gathering information to assess an alleged conflict of interest. Unum contends that after accruing and billing 95.9 hours on discovery and filing its motion to compel after going back and forth, on the day of oral argument plaintiff withdrew her objections and the motion was, thereafter, denied as moot. Unum, therefore, contends that the 95.9 hours should be disallowed.

The Advisory Committee's Notes to Rule 26(g) provides:

> Rule 26(g) imposes an affirmative duty to engage in pretrial discovery in a responsible manner that is consistent with the spirit and purposes of Rules 26 through 37. In addition, Rule 26(g) is designed to curb discovery abuse by explicitly encouraging the imposition of sanctions. The subdivision provides a deterrent to both *excessive discovery* and evasion by imposing a certification requirement that obliges each attorney to stop and think about the legitimacy of a discovery request, a response thereto . . .

However, in this case it seems that Bayer's counsel conducted a large amount of research on a non-issue in the case, conflict of interest. Bayer's counsel billed for propounding the discovery; preparing a spread sheet; filing the motion to compel, a reply, and preparing for oral argument, but then voluntarily withdrew the motion. A prevailing party is not limited to recovery on successful

motions alone. Indeed, unsuccessful motions too are compensable if they are not frivolous. *Blissett v. Casey*, 969 F. Supp. 118, 130 (N.D.N.Y. 1997).

On March 27, 2019, Plaintiff propounded discovery to Unum. Rec. doc. 26. Unum responded on May 28, 2019. Unum's responses, according to Bayer, were defective, non-responsive, and insufficient because (a) Unum refused to answer several Interrogatories (notably 5, 11-15, and 18) and (b) submitted only its Claims Benefits Manual (and, eventually, the CVs of the doctors identified) in response to Plaintiff's seventy (70) Requests for Production of Documents. *See id.*

The discovery at issue (1) related directly to the completeness of the Administrative Record, (2) information about the existence and extent of a conflict of interest created by a plan administrator's dual role in making benefits determinations and funding the plan, and (3) evidence concerning how the administrator has interpreted the plan's terms in previous instances – all of which Bayer contends were discoverable issues, even in ERISA cases.

Rather than challenge the actual sufficiency of the response, Bayer complained about the volume and organization of the document response. Bayer, thereafter, sought an order from Unum requiring it to provide a correlation of its documents to the response given and later notified the Court that the motion was moot which will be addressed later in this opinion.

Unum contends that Bayer's counsel prepared, exchanged, and edited back-and-forth among three attorney's multiple drafts of the discovery from March 13, 2019 through March 27, 2019. *See* Rec. doc. 68. According to Unum, the billing records shows that 33.5 hours were billed in drafting discovery. *See id.* Unum contends that the record illustrates that there were 25 Interrogatories, 70 Requests for Production of Documents, and 11 Admissions propounded.

While Unum seeks that there be no recovery for the hours Bayer's counsel worked on propounding discovery, the propounded discovery benefited the case even though counsel duplicated

work during the drafting phase. While the largest amount of drafting time went to the Request for Production of documents, in reviewing the documents, the Court finds that most of the question were not relevant to this ERISA claim. They contained questions seeking production of documents comparing claims, conflict of interest, and payment of claims. Given the type of case this is, there was no conflict of interest, similar claims were irrelevant, and there was no dispute regarding what was paid. *See* Rec. doc. 26-4. The issue was whether the Administrator abused their discretion by the denying claim.

The record shows that 75.3 hours were billed in discovery related entries excluding the time Plaintiff took on her motion to compel. CP billed (41.8 hours),[12] DG billed (22 hours),[13] LR billed (13 hours),[14] DA billed (1.9 hours),[15] and KS billed (0.5 hours)[16] for a total of 75.3 hours. However, only DG's hours of 22 hours are reasonable. All billers billed using the same entry description that consists of various entries drafting and revising written discovery, which is unnecessarily redundant. As such, CP's (41.8 hours), LR's (13 hours), DA's (1.9 hrs) and KS' (0.5 hours) will be disallowed as duplicative for a total of 57.2 hours disallowed.

As an example of the nature of the discovery work billed, Unum contends that Bayer's lawyers engaged in excessive conferences. For example, Unum points out that the drafting of discovery began with a meeting of three attorneys and a paralegal and that each person billed time for that meeting. *See* Rec. doc. 68. Unum complains that the time billed for discovery is excessive because

[12] CP 2/11/2019 (2.1 hours); 3/18/2019 (0.4 hours); 5/30/2019 (5.5 hours) ; 6/5/2019 (6.5 hours); 6/6/2019 (3.4 hours); 6/6/2019 (3.4 hours); 6/7/2019 (6.3 hours); 6/10/2019 (4 hours); 6/11/2019 (5.1 hours); 6/18/2019 (1.5 hours); 7/1/2019 (3.1 hours).

[13] DG 3/13/2019 ( 2.9 hours); 3/14/2019 (0.9 hours); 3/14/2019 (0.5 hours); 3/19/2019 (0.9 hours); 3/20/2019(1.2 hours); 3/26/2019 (3 hours); 3/27/2019 (0.9 hours); 3/27/2019 (2.3 hours); 5/31/2019 (0.9 hours); 6/11/2019 (6.5 hours); 6/12/2019 (0.4 hours); 6/12/2019 (0.2 hours); 6/17/2019 (1 hours); 7/26/2019 (0.4 hours).

[14] LR 3/20/2019 (0.5 hours); 3/21/2019 (4.7 hours); 3/21/2019 (4.7 hours); 3/22/2019 (2.30 hours); 3/27/2019 (0.2 hours); 3/27/2019 (0.6 hours).

[15] DA 3/22/2019 (0.5 hours); 3/27/2019 (1.3 hours); 7/25/2019 (0.1 hours).

[16] KS 6/17/2019 (0.5 hours)

every time they met to discuss every aspect of discovery that each person who attended the meeting billed for the time including the paralegal. The billing records indicate that there are seventeen (17) different entries for conferences regarding the drafting of discovery from February 7, 2019- March 27, 2019. The total hours allocated to conferences regarding discovery, however, only equals 11.8 hours.

While in only one instance everybody billed for the one meeting and two additional instances Gianna, Rudin, and Payton billed for the same conference, the remaining entries reflect that one person billed for the conference. The time entries are typical of a younger lawyer billing for the time after conferring with a more senior attorney on an assignment. The Court finds that 11.8 hours are allowable and the few conferences where more than one person billed are not excessive.

Unum also contests time spent by Bayer's counsel preparing a spreadsheet, which consisted of a compilation of the Interrogatory Questions, Answers, and Caselaw supporting ability to compel a response. Rec. doc. 68. The time records show that CP spent a total of 15.9 hours and DG spent 0.2 hours working on a spreadsheet, [17] which ultimately did not have any impact on the case. Therefore, the time spent compiling the spread sheet totalling 16.1 hours will be disallowed.

Unum also contests Bayer's counsel's time for drafting and revising a motion to compel. Unum contends that Bayer's counsel billed 13.9 hours for drafting and revising the motion, and an additional 17 hours for drafting a reply memorandum only to withdraw their motion on the day of the hearing. Therefore, Unum contends that a total of 30.9 hours was billed for a motion to compel, which did not benefit the case.

However, a close review of the billing records reveals that a total of 25.9 hours was actually

[17] 6/3/2019-CP (6.20 hours); 6/4/2019-CP (6.30 hours); 6/13/2019-CP (3.40 hours). 6/13/2019- DG (0.20 hours).

spent by four different people drafting the Motion to Compel. CP billed (15.1 hours),[18] DG billed (5.9 hours)[19], LR billed (4.6 hours)[20] hours, and KS billed (.30 hours) for the motion to compel that was withdrawn as moot. Moreover, a review of the discovery requests themselves show that the information sought and ultimately received, such as requests addressing possible conflict of interest, did not progress the case. The discovery and motion were not necessary given the facts of the case. These hours will be disallowed.

Finally, in reviewing the time allocated for preparation of the subject motion, the Court finds that the hours were excessive. Therefore, these hours will be reduced by 12.4 hours[21].

| Billing Attorney/Paralegal | Billed Hours | Rate | Disallowed hours | Reasonable Fee |
|---|---|---|---|---|
| Dominic Gianna | 218.2 | 350.00 | -6.1 | $74,235.00 |
| Lee Rudin | 108.4 | 305.00 | -21.5 | $26,504.50 |
| Courtney Payton | 367.3 | 275.00 | -187.6 | $49,417.50 |
| Karen Seghers | 79 | 110.00 | -1.8 | $8,492.00 |
| Diane Abraham | 19.4 | 110.00 | -7.6 | $1,298.00 |
| P.S.[22] | 3.5 | 110.00 | -3.5 | 0 |
| Total | 795.8 | - | -228.10 | $159,947.00 |

The total Lodestar value then is ***$159,947.00***

[18] 7/1/2019-CP (4.50 hours); 7/2/2019-CP (2.50 hours); 7/8/2019-CP (0.30 hours); 7/24/2019-CP (1.10 hours); 7/24/2019-CP (2.10 hours); 7/24/2019-CP (4.20 hours); 7/29/2019-CP.

[19] 7/26/2019-DG (0.20 hours); 7/30/2019-DG (3.00 hours); 7/30/2019-DG (0.20 hours); 7/31/2019-DG (2.50 hours).

[20] 7/3/2019-LR (1.10 hours); 7/8/2019-LR (0.50 hours); 7/8/2019-LR (0.10 hours); 7/9/2019-LR (0.10 hours); 7/9/2019-LR (0.50 hours); 7/24/2019-LR. (0.10 hours); 7/24/2019-LR (0.40 hours); 7/26/2019-LR (0.90 hours);7/26/2019 LR(0.10 hours) ;7/26/2019-LR(0.60 hours); 7/30/2019-LR (0.10 hours); 8/1/2019-LR (0.10 hours.)

7/3/2019-KS (0.10hours); 7/8/2019- KS (0.20 hours).

[21] 05/25/20- CP (1.5 hours); 05/29/20-CP-(2.3 hours); 6/2/20-CP-(2.5 hours), 6/2/20-CP ( 3.3 hours); 6/3/20-CP-(1.6 hours); and 6/11/20-CP-(1.2 hours)

[22] No information provided on P.S. education background or experience, and, as such, no recovery shall be permitted.

## IV. ***Johnson* Factors**

As indicated above, after the lodestar is determined, the Court may then adjust the lodestar upward or downward depending on the twelve factors set forth in *Johnson*, 488 F.2d at 717-19. To the extent that any *Johnson* factors are subsumed in the lodestar, they should not be reconsidered when determining whether an adjustment to the lodestar is required. *Migis v. Pearle Vision, Inc*., 135 F.3d 1041, 1047 (5th Cir. 1998).

The Court considering the *Johnson* factor, finds the amount awarded is sufficient and not requiring a downward departure.

## V. **Costs**

Bayer also seek the award of costs in the amount of $2,240.40. She does not, however, provide a statutory basis for their request. They do, however, attach evidence of costs incurred in connection with this matter.

According to the order issued by the District Judge, Bayer's claim for attorney's fees was granted and referred to the undersigned. *See* Rec. doc. 61, pp. 22-23. The order makes no reference regarding the awarding of costs and nor did Bayer request an award of costs. Consequently, the issue of costs was not referred to the undersigned for consideration and is, therefore, denied.

Accordingly,

## VI. **Recommendation**

**IT IS RECOMMENDED** that **The Application for Attorneys' Fees and Costs ( Rec. doc. 64)** be **GRANTED** and that Plaintiffs are awarded reasonable attorney's fees in the amount of **$159, 947.00**

**IT IS FURTHER RECOMMENDED** that Bayer's request for costs be **DENIED.**

**IT IS FURTHER RECOMMENDED** that Defendant UNUM Life Insurance Company of

America shall satisfy their obligation to the Plaintiff **no later than twenty-one (21) days** after the adoption of this report and recommendation.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a Magistrate Judge's Report and Recommendation within **fourteen (14)** days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court, provided that the party has been served with notice that such consequences will result from a failure to object. *See Douglass v. United Services Auto. Ass'n,* 79 F.3d 1415, 1430 (5th Cir. 1996).

New Orleans, Louisiana, this 27th day of July 2021.

**KAREN WELLS ROBY**
**UNITED STATES MAGISTRATE JUDGE**